In the matter of the appeal from the decree of the orphans court of the county of Atlantic, dated November 16th, 1929, reversing and setting aside the probate of certain paper-writings as the last will and codicils of CARRELL DOUGHTY, deceased, and revoking letters testamentary issued thereon by the surrogate of said county.

[Decided November 25th, 1930.]

*Messrs. Endicott & Endicott* and *Mr. Lewis Starr,* for Phebe E. Doughty, proponent and appellant.

*Mr. Lewis P. Scott, Mr. Thomas G. Siddall* and *Mr. William I. Garrison,* for Louis T. Doughty, caveator and appellee.

*Mr. Emerson L. Richards,* for Lydia M. Johnson, appellant.

INGERSOLL, VICE-ORDINARY.

The surrogate of the county of Atlantic admitted to probate a certain will, and four codicils thereto, of one Carrell Doughty. Louis T. Doughty, a son, appealed from such probate to the Atlantic county orphans court, which court reversed and set aside the said order of probate. The orphans court also allowed a counsel fee of $30,000 to counsel for the appellant and a counsel fee of $10,000 to counsel for the respondent, and allowed certain other costs.

On the 16th day of August, 1918, the decedent, Carrell Doughty, made his will. This will was prepared and executed in the presence of the late Judge Allen B. Endicott. This will gave to his son, Louis T. Doughty, $1,000 in cash and certain property in which he, the son, then lived, in Atlantic

City, New Jersey; to his daughter, Flora Bell Meyers, certain other premises in Atlantic county, and to a daughter, Phebe Emma Doughty, certain premises in Ocean City, and provided that if, at his death, there be any mortgage or other lien on said properties, or any of them, the executrix should discharge such lien from any money belonging to the estate available for that purpose. He also provided for certain other bequests to his housekeeper and others. He further provided that "because of the many years of faithful service and devotion on the part of my daughter, Phebe Emma Doughty, I have given her the property above mentioned" and allowed her to retain six per cent. of all moneys that should come into her possession as executrix.

A most careful examination of the testimony leads me to the conclusion that Doughty was at that time competent to make this will and that there is no proof of any undue influence on the part of anyone to make this will, and that there is proof that no undue influence was exercised to induce the making of this will.

On the 23d day of June, 1922, Doughty made a codicil to said will in which he revoked paragraph 5 of said will, "the said Annie S. Reddington [the beneficiary thereunder] having died since the making of said will." He revoked paragraph 9, in which he had devised to his son the property in Atlantic City, "the same having been sold by me since the making of my will," and provided "in place and stead" of said provision in paragraph 9, a fund of $10,000 in trust for the benefit of the said Louis T. Doughty, the son, and also made a provision that in case of ill health of said son, the executrix could make certain payments to the said Louis T. Doughty. This codicil was prepared in the same law office, but by Allen B. Endicott, Jr., the son of Judge Endicott, who had died in the meantime.

No criticism of the provisions of this codicil can be made. It shows clearly the mental aptitude of Doughty and there is nothing therein, if the will be valid, to indicate, nor is there any testimony concerning the same, that would indicate undue influence.

On the 19th day of July, 1922, an additional codicil was prepared and executed, in which he revoked the devise to his daughter, Flora Bell Meyers, of the land in Atlantic county, and provides for a trust fund of $10,000 and permission to make payments of the principal thereof in her favor, in the same terms as had been provided for Louis T. Doughty in the former codicil. This apparently was done to make equal provision for these two children. He also provided that in the event the boardwalk in Ocean City should be moved oceanward from its then location, that the property devised to his daughter, Phebe Emma Doughty, should be the land lying oceanward of the boardwalk as relocated, and the land on the inland side of the boardwalk as relocated should belong to and be a part of the residuary estate. This change, in effect, only located the land given to his daughter, Phebe Emma Doughty, and in fact increased the amount of his residuary estate by reason of the increased value of his property in Ocean City, which increase in value would result from the relocation of the boardwalk.

On the 18th day of March, 1926, he made an additional codicil in which he gave the property in which he was then living to Lydia M. Johnson, his nurse and attendant, for the term of her life, and directed that the estate should pay the taxes, keep the buildings in repair and pay curbing and sidewalk assessments. Upon the death of the said Lydia M. Johnson, the same to become a part of the residuary estate.

There is criticism of this codicil, the respondents insisting that it was the result of undue influence by Phebe Emma Doughty, the intimation being that it was for the purpose of having the friendship of and testimony by Mrs. Johnson in favor of the will and several codicils. I cannot find that there was undue influence exercised in the making of this codicil. Doughty's increasing age, his increasing infirmities, particularly of the eyes, caused him to rely for his physical comforts more and more upon his nurse or attendant, and it is only natural to believe that as time went on he felt the urge to be more generous to the one so contributing to his physical comfort.

On the 23d day of January, 1928, Doughty made a fourth codicil, in which he creates, in the event of Louis T. Doughty's wife surviving her husband, a trust fund of $5,000 for her, and revoked the provision for special payment to Louis T. Doughty and Flora Bell Meyers in case of their illness. He further provided that the property bequeathed to Phebe Emma Doughty should extend oceanward from the boardwalk as then located, and not limited to the land oceanward of the boardwalk as it should be thereafter located. He also further provides for an additional gift to Mrs. Johnson, the nurse, of $5,000.

Shortly before Doughty's death a fire destroyed the buildings upon his land in Ocean City. New and more expensive buildings were erected upon the line of the new boardwalk, it having been relocated oceanward. To finance these buildings, Doughty placed a mortgage thereon in the sum of $65,000. Doughty died shortly thereafter, without having paid said mortgage or having made any provision for the payment thereof other than that provision of the will dated the 16th day of August, 1918, wherein he directed that any mortgage or other liens existing on the property devised by him should be discharged from any money belonging to the estate available for that purpose, the result being that to give Phebe Doughty the property devised to her, free and clear of all encumbrance, it would probably require the sale of all, or at least a substantial part, of the residuary estate.

This changed condition, after the making of the codicil, was occasioned by the occurrence of the fire and the rebuilding occasioned thereby, and if the codicil was valid at the time of the making thereof, these occurrences, with the result incident thereto, did not affect that validity.

I am convinced, as heretofore stated, that the will is valid, and I am unable to find any time in the making of these respective codicils where I can say that proof exists of undue influence on the part of Miss Doughty. I have little if any hesitancy in stating that at the time Doughty made the last codicil he did not expect his daughter to receive practically the entire estate. Certainly he could not anticipate the fire

which destroyed the buildings which he had expected to be able to move to the new location of the boardwalk, and the necessity of erecting new buildings at such a great expenditure, and the creation of the mortgage to finance the same, thereby creating a liability chargeable to the residuary estate. It may well be said that had this fire occurred when Doughty was in possession of greater vigor that a further codicil would have been made. It is apparent that such action was in his mind, as upon a number of occasions he caused his attendant, Mrs. Johnson, to read to him the then existing codicils; that such action upon his part indicates his knowledge of the situation and his deliberation concerning the same, and certainly his failure to change the terms of his will after the changed conditions arose cannot influence the court in saying the codicil was invalid.

The opinion of the orphans court states:

"The following circumstances have been proved to exist in this case, which tend to show that the testator was unduly influenced by his daughter, Phebe E. Doughty, and which circumstances have not been satisfactorily explained by the proponents, namely:

First. There existed a confidential and fiduciary relationship between the testator and his daughter, the said Phebe E. Doughty;

Second. The testator's mind was enfeebled to the extent that he could not resist the improper influence of said daughter, Phebe E. Doughty;

Third. The efforts of the said Phebe E. Doughty to exclude the natural objects of her father's bounty from his society;

Fourth. The concealment of the making of the will, or the fact that the will had been made, by the said Phebe E. Doughty;

Fifth. The said Phebe E. Doughty's long-standing animosity toward her brother, by which she exerted an influence over her father, to such an extent as to create in him resentment toward the said brother, Louis T. Doughty, or false impressions; and finally

Sixth. The will itself, with its four codicils, showing a

continuous subtraction from the portion of the estate to be received by Louis T. Doughty, and his sister, Flora Bell Meyers, and a continuous addition to the said Phebe E. Doughty's portion until she became the principal beneficiary under the will."

There can be no doubt of the first circumstance. The fourteenth clause of the first will refers to "the many years of faithful service and devotion on the part of my daughter, Phebe Emma Doughty." The proponents insist that by reason of the conduct of Phebe E. Doughty, she exiled herself from her family and from this country for a number of years, returning only shortly before the death of her mother. While this conduct caused an estrangement between Louis T. Doughty and Phebe E. Doughty, it did not result in an estrangement between her father and herself, as she took up her home with her father and remained upon intimate relations with him until his death. His wife had, for many years, acted as secretary to Doughty, and upon the wife's death, this duty was taken up by Miss Doughty, and her services in assisting her father in his business affairs increased from time to time until at the time of his death she was performing almost all of the active duties of his business.

I am unable to agree with the judge of the orphans court that Doughty's mind was enfeebled to the extent that it could not resist the improper influence of the daughter. I have found that she did not exercise undue influence in the preparation of the will, nor can I find the point where such influence, if it ever existed, became undue. I cannot find that Phebe E. Doughty excluded the natural objects of her father's bounty from his society. It is claimed that she excluded Louis T. Doughty from the father's society. The testimony is clear that she did not do so. Her reason for asking that Louis telephone when he was going over to Bakersville appears to be reasonable, and I cannot help but believe that Louis T. Doughty went to see his father as often as he, Louis, desired, and that the father was not prevented from calling upon Louis when he desired to do so.

Much testimony has been given concerning the father's

relations with Louis T. Doughty. It is manifest that the father never considered his son Louis as a business man or one in whom he would place responsibility or in whose judgment he, the father, would depend. In the business in which the son participated with his father, the father had absolute control, with the single exception of the seafood business which Louis conducted after his father left Atlantic City, and which thereafter resulted in failure. The value of the estate attests to the business ability of the father. The deceased was manifestly satisfied with the daughter's business conduct, which she testified was under his control and direction, and there can be no question that the father had much greater confidence in the business ability of the daughter than that of the son.

The fourth and fifth circumstances are based upon the ill-feeling which manifestly began many years ago between Louis and Phebe and which, without doubt, exists to the present day. Louis resented the immoral life his sister was living, and without doubt, this resentment on his part resulted in animosity toward him. The father, however, evidently forgave her.

The sixth circumstance has been considered.

Criticism is also made of the manner in which she conducted her father's business. He was satisfied with her conduct of it and apparently, if she did so conduct it under the advice of her father, as she testified, his advice was good, and if she conducted it upon her own initiative, her business judgment appears to have been good.

"The influence which the law denominates 'undue' must be such as to destroy the free agency of the testator and amount to moral or physical coercion. It must be proved, moreover, that the act done was the result of such coercion. There must be a control exercised over the mind of the testator or an importunity practiced which he could not resist." *Clifton* v. *Clifton, 47 N. J. Eq. 227; In re Tunison's Will, 83 N. J. Eq. 277; Loveridge* v. *Brown, 98 N. J. Eq. 381.*

It is unnecessary for me to determine whether the burden has been cast upon the proponents to show that undue in-

fluence has not been exerted, as I am able to find that undue influence was not exerted. It would be useless in this finding of fact to cite cases, as the law in force is not questioned.

After a careful review and consideration of the testimony and the laws of this state, I am convinced that said will and the codicils thereto were not the product of undue influence exercised by the said Phebe E. Doughty over the testator. At the time of the making of the last codicil, the residuary estate amounted to a considerable sum, to be divided between the three children, and although circumstances arose thereafter which, in effect, gave to said Phebe E. Doughty the benefit of $65,000, which sum was to be taken care of by the residuary estate, that result cannot change the effect of the codicil.

Innumerable instances occur from time to time where a changed condition and the failure of a person to change his testamentary disposition results in unintended disposition of a decedent's property, but it cannot for an instant be considered that the sale by the testator in his lifetime of property or personalty devised or bequeathed would result in the cancellation of a will. This statement is so manifest that the legislature, deeming that if one certain changed condition should arise, a will should be declared void, and provided by statute "that every last will and testament made when the testator had no issue living, wherein any issue he might have is not provided for or mentioned, if at the time of his death he leave a child, children or issue, or leave his wife enciente of a child or children which shall be born, such will shall be void, and such testator be deemed to die intestate." *4 Comp. Stat. p. 5865 § 20.*

An appeal is also taken from the order for allowance of counsel fees. The court below allowed $30,000 fees to counsel for Louis T. Doughty and $10,000 for counsel for Phebe E. Doughty.

Chancellor Walker, as ordinary, *In re Wandell, 92 N. J. Eq. 195,* held: "An allowance made by the orphans court of counsel fees on a contest over the probate of a will ought not to be overthrown by this court on appeal, unless it quite

conclusively appears that the allowance was excessive (in which case it should be reduced), or that the contest below developed no reasonable ground for further litigation, and where the decision of the orphans court that the unavailing contest was reasonable in that tribunal can be upheld, it should be, and where the judge of the orphans court, who tried the cause and saw and heard the witnesses, concludes there was reasonable ground of contest there, he should be upheld, if he may be, without doing violence to the case as it appears upon the record."

"One provision of the statute is that the contesting party shall pay the costs and expenses of the litigation unless he offers no evidence other than that of the subscribing witnesses. Therefore, a party who would inherit in case of intestacy may, in any event, examine the subscribing witnesses without peril of costs being visited upon him; but, where he goes on with an affirmative contest, he shall not have costs out of the estate (unless the trial court concludes that there was reasonable ground therefor); and, although the contest may be reasonable in the orphans court, yet, if the losing party is not satisfied with its judgment and appeals to this court, as is his right, this court will determine whether or not the contest here was reasonable, quite irrespective of the decision in the court below as to the reasonableness of the contest there."

It is manifest that there was sufficient ground for the appeal by Louis T. Doughty, as the orphans court sustained it. It is likewise manifest, in my view, that the proponents of the will had just cause, as well as a duty, to present the will for probate, but I cannot believe that counsel for the appellant below should be entitled to receive so much greater a fee than allowed in proponent's case. I take it that the orphans court judge was governed in his allowance to the proponents, to a great extent, upon their public announcement that they did not feel they were entitled to more than $10,000 and made his allowance accordingly. I cannot believe that counsel for appellant below should be entitled to receive three times the amount allowed the proponent.

I will advise that the fee of $30,000 be reduced to $15,000 and will make no change in the allowance to the other counsel. The judge of the orphans court, of course, had an opportunity of knowing, by actual presence, the labor performed by counsel for each side, and although I am inclined to believe that an equal allowance to each would be justifiable, I feel that I am justified in accepting his view that the counsel for Louis T. Doughty, who was the moving party in the appeal below, should receive a greater amount than should the counsel for the proponent.